**Herbert ERNST, Jr., Trustee in Bankruptcy, Plaintiff,**

v.

**The WHITE MOTOR CREDIT CORPORATION, Defendant.**

**In the Matter of Dwight E. VILLARS, Lorna C. Villars, Debtors.**

**Bankruptcy No. 3–82–00087. Adv. No. 3–82–0257.**

United States Bankruptcy Court, S.D. Ohio, W.D.

March 14, 1983.

Herbert Ernst, Jr., Dayton, Ohio, trustee/plaintiff.

Daryl R. Douple, Dayton, Ohio, for defendant.

William B. McCracken, Wilmington, Ohio, for debtors.

## DECLARATORY DECISION

CHARLES A. ANDERSON, Bankruptcy Judge.

This is an action by the Trustee for a turnover of the certain collateral claimed by Defendant (a White Combine Model No. 8900, S/N/ J23353) or its equivalent value, "free and clear of liens."

## FACTS

The operative facts have been stipulated, *verbatim* as follows:

"Now comes the Plaintiff, Herbert Ernst, Jr., Trustee and the Defendant, The White Motor Credit Corporation, and hereby stipulate to the following facts:

1. That Herbert Ernst, Jr., is the duly qualified and acting Trustee of the estate of Dwight E. and Lorna C. Villars, debtors herein.

2. That this is an action of which this Court has jurisdiction under Title 11 of the United States Bankruptcy Code.

3. That Debtors filed a petition commencing bankruptcy proceedings in this Court on January 14, 1982.

4. That this is an action for disposition of a certain new White 8700 Combine, Serial # J2353 and that said combine is 'equipment used in farming oper-

ations' for the purpose of Section 1309.38 (UCC 9–401).

5. That Defendant filed its original Financing Statement in Clinton County, Ohio, on April 7, 1980 covering a certain White 8900, Serial # K21159 DSL Combine, purchased by Dwight E. Villars and financed by the Defendant, copy attached and marked Joint Exhibit "A". (Defendant alleges a valid security interest in said Combine and Plaintiff denies same. This being the only legal issue to be determined by the Court).

6. That said combine, described in Paragraph 5 above, was destroyed by fire and the Sentry Insurance Company paid Defendant $42,219.00 (See December 4, 1981 letter from Sentry Insurance and copy of check attached as Joint Exhibit "B").

7. That Defendant issued a check to McHenry's Equipment Company for $39,-750.00 as payment for a new combine, thereby leaving a credit in favor of Dwight E. Villars from Defendant in the sum of $2,469.00, as of December 8, 1981 (See December 8, 1981 letter from Defendant to Dwight E. Villars and Change of Collateral document, dated November 16, 1982, marked Joint Exhibits "C" and "D").

8. That Defendant filed an Amended Financial Statement in Clinton County, Ohio, on December 10, 1981, "To change description of equipment covered on above original UCC–1 filing to '1 New White 8700 Combine, S/N J23353'," copy attached and marked as Joint Exhibit "E".

9. That Plaintiff requested by letter of March 19, 1982, to Defendant's attorney, Daryl R. Douple, that Defendant turnover said successor Combine, or its equivalent value, free and clear of any liens, which Defendant, through counsel, has refused to do.

10. That the attached Exhibit "F" is a copy of the Retail Installment Contract, dated April 3, 1980, entered into by Dwight E. Villars and assigned to Defendant.

11. That the attached Exhibit "G" is a copy of the Purchaser's Statement completed by Dwight E. Villars at the time he received credit from Defendant.

12. That the telephone number (289-2913) listed on the Purchaser's Statement, attached to Exhibit "G", under the heading "Residence phone," is a Clarksville, Clinton County, Ohio, exchange.

13. That on the above named dates, and at all times relevant herein, Dwight E. Villars and his wife resided in Montgomery, Hamilton County, Ohio (See Affidavit attached to Joint Exhibit "H")."

After the expiration of the stay in the decision of the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598, 9 B.C.D. 67, 6 C.B.C.2d 785 (1982) the litigants filed a stipulation as to jurisdiction, as follows:

"In accordance with Court Order entered in this District on January 10, 1983, the parties herein, Herbert Ernst, Jr., Trustee in Bankruptcy, Plaintiff herein, by and through counsel, and The White Motor Credit Corporation, Defendant herein, by and through counsel, both hereby waive, to the extent permitted by the Constitution, all jurisdictional questions under *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* Order of the Court of Appeals for the Sixth Circuit and the Order of the District Court for the Southern District of Ohio.

It is the specific intent and desire of the parties herein that the issues raised in this adversary proceeding be submitted to the jurisdiction of this Bankruptcy Court for an expeditious resolution of this pending matter."

## DECISION

██ This Court has on several occasions held that an unperfected security interest is not effective as against a trustee in bankruptcy's lien. Prior to the amendment of Ohio Revised Code Section 1309.38(B) (UCC 9–401(4)) it was determined that a trustee in bankruptcy in any event is not charged with knowledge of an unperfected security

interest unless all creditors he represents have knowledge. See *In re Throckmorton's Inc.* (1966) 4 UCC Reporting Service 240. In any case, the knowledge provision as to subsequent lien creditors has been deleted in the 1972 Code as adopted in Ohio. See decision by this Court *In the Matter of American Riggers, Inc.* 19 B.R. 473 (Bkrtcy. Ohio, 1982) refusing to apply the good faith filing provision since the 1972 Amendment deleting the knowledge requirement as to a subsequent filing by a creditor with knowledge. Section 1309.20(C) (UCC 9–301) acknowledges, of course, that a "lien creditor" includes a trustee in bankruptcy.

It is a common occurrence that a secured party may in good faith file in the wrong place, or not in all of the right places, when dual filing is required. If the security agreement and financing statement cover collateral of various kinds, requiring filings in different offices in order to comply with the requirements of Revised Code Section 1309.38 (UCC 9–401), this section makes the filing effective for collateral as to which it is proper. Such are not the facts *instanter.* See 69 Am.Jur.2d Secured Transactions § 415.

The Defendant urges that, "under the circumstances of this case, the Court should assert its inherent equitable powers and allow White's secured claim. The circumstances resulting in the filing of a financing statement only in Clinton County has been set out above. . . . Further, it would work a substantial injustice upon White who at all times reasonably relied on the Debtor's information. . . ."

The facts demonstrate that the improper filing was no doubt at least in part due to an interpretation of information as to the residency and place of doing business as supplied by Debtor.

The principles of equity would be operative, however, to rectify only the relationship of the secured party and the debtor. As between these parties, the security interest would have been valid and enforceable.

It is important to note, nevertheless, that Defendant now seeks to apply equity to defeat the lien of a trustee in bankruptcy under both the federal bankruptcy law and the Ohio statutes. Perfection or the lack of perfection under Article 9 of UCC relates only to the priority over other secured creditor's interests in the collateral. Ohio Revised Code Section 1309.38(B) as to good faith filing does not in any way alter the basic UCC notice filing ·concepts and, as mentioned in *Throckmorton's,* "any other holding would in effect, nullify the filing sections of the Uniform Commercial Code. . . ."

It would be absolutely incongruous to apply equitable principles to defeat the rights of third parties who were in no way involved in the questioned transaction. Equity acts *in personam,* not *in rem.* As against a subsequent estate, interest, or title, equity cannot confer a superior interest or title. Equity courts are bound by positive provisions of a statute equally with courts of law and in the administration of assets do not interfere with absolute legal priority. See 27 Am.Jur.2d, Equity §§ 122, 124.

We find our prior decisions consistent with the conclusion in *Anderson's UCC,* Sec. 9–401: 29 at page 449: "The risk of filing in the wrong county is a risk to which the creditor is subject and it is immaterial that the debtor has misled him as to the debtor's address, for the creditor has the burden of verifying the information in order to be certain that he has satisfied the minimal requirements of the Code with respect to filing. Filing in the wrong county fails to perfect the interest of the creditor and this is so even though the filing is made based on the address given by the debtor, the creditor assuming that the address was the residence address as well as the business address of the debtor."

Conformably to this Court's decision in *Butz, Trustee v. Society National Bank of Miami Valley* (1983) Case No. 3–82–0571, Adv. No. 3–82–00546, a judgment entry journalizing the decision herein will be held under advisement pending resolution of the jurisdictional questions pertaining to Bankruptcy Court judgments

until the Congress by legislation confers unquestioned jurisdiction either upon Bankruptcy Judges or District Judges which can bear constitutional muster. If the litigants herein finalize a settlement agreement in the interim based upon the above *ratio decidendi,* such agreement should be reduced to writing and submitted to the Court for filing in the caption adversarial file.